JOHNSON & WEAVER, LLP
FRANK J. JOHNSON (SBN 174882)
frankj@johnsonandweaver.com
SHAWN E. FIELDS (SBN 255267)
shawnf@johnsonandweaver.com
600 West Broadway, Suite 1540
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856

*Attorneys for Plaintiff*

**UNITED STATED DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILLIAM PACK, derivatively on behalf of ROCKET FUEL INC., <br><br> Plaintiff, <br><br> v. <br><br> GEORGE H. JOHN, ABHINAV GUPTA, J. PETER BARDWICK, SUSAN L. BOSTROM, RONALD E.F. CODD, WILLIAM ERICSON, RICHARD FRANKEL, JOHN GARDNER, CLARK KOKICH, RANDY WOOTTON, and MONTE ZWEBEN, <br><br> Defendants, <br><br> -and- <br><br> ROCKET FUEL INC., a Delaware Corporation, <br><br> Nominal Defendant. | Case No.: <br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** <br><br> <u>DEMAND FOR JURY TRIAL</u> |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

By and through his undersigned counsel, Plaintiff William Pack ("Plaintiff") brings this shareholder derivative action on behalf of Rocket Fuel Inc. ("Rocket Fuel" or the "Company") and against certain current and former officers and directors of the Company for breaches of fiduciary duties, unjust enrichment, corporate waste, insider trading, and aiding and abetting thereof. Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Rocket Fuel and other related parties and non-parties with the U.S. Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the defendants and other related non-parties; (c) review of news articles, shareholder communications, and postings on Rocket Fuel's website concerning the Company's public statements; (d) review of the pleadings and other documents in the consolidated federal shareholder class action entitled *In Re Rocket Fuel, Inc. Securities Litigation*, Case No. 4:14-cv-03998-PJH (N.D. Cal.) (the "Securities Class Action"); and (e) review of other publicly available information concerning Rocket Fuel and the Individual Defendants (defined below).

## INTRODUCTION

1.      Rocket Fuel is a technology company that has developed a predictive modeling and automated decision-making platform based on Artificial Intelligence ("AI"). The Company's media buying technology platform uses AI to determine how to purchase advertising to optimize returns on investment.

2.      Between at least September 20, 2013 and the present (the "Relevant Period"), the Individual Defendants failed to disclose material facts, and either made, caused to be made, and/or failed to correct statements concerning Rocket Fuel's business, operations, prospects, internal controls, and financials, causing the Company's stock to trade at artificially inflated prices. Specifically, during the Relevant Period, the Individual Defendants caused Rocket Fuel to make materially inaccurate financial guidance and failed to disclose that: (a) Rocket Fuel was unable to adequately identify and eliminate fraudulent "bot traffic" used

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

to artificially increase advertising views; (b) the Company knew of the substantial negative impact that this bot traffic was having on the market; (c) by overstating Rocket Fuel's ability to block bot traffic, the Company was incurring material risks to its financial projections and outlook, including from the loss of customers; and (d) as a result, Rocket Fuel's financial projections and overall Company outlook during the Relevant Period were materially false and misleading at all relevant times.

3.    Before and during the Relevant Period, the Individual Defendants caused Rocket Fuel to offer periodic positive assessments of the Company's performance and financial outlook, including statements regarding the capability of Rocket Fuel's proprietary technology to eliminate threats, which would lead to happy customers and positive economic returns.

4.    For example, on November 6, 2013, the Individual Defendants caused Rocket Fuel to post on its website: "Rocket Fuel undermines fraudulent practices and ***makes sure con artists always leave empty handed***.  Using the same powerful technology that optimizes our clients' campaigns, ***Rocket Fuel is able to identify and eliminate all threats*** before serving a single ad."

5.    On August 5, 2014, however, the Individual Defendants caused Rocket Fuel to issue a press release announcing that the Company had significantly lowered its guidance for 2014 to between $385 million and $405 million, sharply lower than the previously announced guidance between $420 million and $435 million.  On a conference call with investors on August 6, 2014, Defendant George John ("John"), the Company's Chief Executive Officer ("CEO"), stated: "[W]e were surprised by the strength of trends in passing our bookings in June and we now feel our full year guidance should take into account slightly lower sales productivity" based on factors including "buzz this summer about bot traffic and low quality ad space on digital exchanges."

6.    When one analyst on the call questioned "the industry concern around [bot] traffic, because it seems like the lack of ROI [return on investment] from bot driven traffic should already be well reflected in the price," John responded: "[F]rom the customer

2

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

perspective is I think a phenomenon in the industry, but hasn't been well understood I think by a lot of advertisers."

7.     John's response was contradicted by those familiar with the truth in the industry, such as the *Wall Street Journal*, which reported on August 12, 2014 that the "online ad industry has been well aware of its fraud problem for years."

8.     As a result of the Individual Defendants' misconduct, Rocket Fuel common stock had traded at artificially inflated levels during the Relevant Period.  When the truth was revealed, the Company's share price plunged.  On August 6, 2014, the Company's stock declined approximately 30% in a single day, dropping from $24.75 to $17.05, and erasing hundreds of millions of dollars in market capitalization.

9.     However, before the truth regarding the Company's financial and business outlook and projections was revealed, certain of the Individual Defendants successfully took advantage of the Company's bloated stock price by selling millions of dollars in personally held stock.

10.     Further, before the August 5, 2014 disclosures, the Company's insiders also cashed out through a secondary public offering issued in February 2014, with prices as high as $61 per share.  In order to additionally ensure their own profits at the expense of the Company's other shareholders, the Company's insiders also obtained an early release from the IPO lock-up agreement, allowing them to sell their shares in February 2014 instead of having to wait until March 2014.

11.     The Rocket Fuel Board of Directors ("Board") has not, and will not, commence litigation against the Individual Defendants, let alone vigorously prosecute such claims, because they face a substantial likelihood of liability to Rocket Fuel for, among other things, authorizing or failing to correct the false and misleading statements alleged herein. Accordingly, a pre-suit demand upon the Board is a useless and futile act.  Thus, Plaintiff rightfully brings this action to vindicate Rocket Fuel's rights against its wayward fiduciaries and hold them responsible for the damages they have caused to the Company.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

**JURISDICTION AND VENUE**

12.     The Court has jurisdiction over all claims under 28 U.S.C. §1332 because there is complete diversity among the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

13.     The Court has jurisdiction over each defendant because each defendant is either a corporation that does sufficient business in California, or is an individual who has sufficient minimum contacts with California so as to render the exercise of jurisdiction by the California courts permissible under traditional notions of fair play and substantial justice.

14.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because one or more of the defendants either resides in or maintains executive offices in this District, including Nominal Defendant Rocket Fuel.  Also a substantial portion of the transactions and wrongs complained of herein – including the Individual Defendants' participation in the wrongful acts detailed herein and aiding and abetting in violations of fiduciary duties owed to Rocket Fuel – occurred in this District, and the Individual Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

15.     Plaintiff William Pack, a resident and citizen of Texas, is a current shareholder of Rocket Fuel.  Plaintiff has continuously held shares of Rocket Fuel stock since on or about September 21, 2013 and at all times during the Relevant Period.

16.     Nominal Defendant Rocket Fuel is incorporated in Delaware and trades on the NASDAQ Stock Market under the ticker symbol "FUEL."  The Company's headquarters are located at 1900 Seaport Boulevard, Redwood City, California 94063.  As of September 30, 2015, the Company has approximately 43 million shares of stock outstanding.

17.     Defendant John was the CEO of the Company from May 2008 to March 2015, the Chairman of the Board from February 2013 to November 2015, and was a member of the Company's Board from March 2008 until November 12, 2015.  John was also a co-founder of

the Company.  John is a defendant in the Securities Class Action.  John received total compensation from Rocket Fuel of $1,906,097 in 2013 and $4,880,202 in 2014.  In addition, according to a Form 8-K filed on November 17, 2015, John executed a separation agreement with the Company on November 11, 2015, pursuant to which John will receive severance payments totaling $191,850.  Further, during the Relevant Period, John misappropriated Company non-public information by selling 307,877 personally held shares of Rocket Fuel stock at artificially inflated prices, for proceeds of approximately $17,935,374.64.  Upon information and belief, Defendant John is a citizen of California.

18.  Defendant Abhinav Gupta ("Gupta") has been employed by the Company as Vice President of Engineering since 2008, and was also a co-founder of the Company.  Gupta received total compensation from Rocket Fuel of $1,066,538 in 2013.  During the Relevant Period, Gupta misappropriated Company non-public information by selling 186,855 personally held shares of Rocket Fuel stock at artificially inflated prices, for proceeds of approximately $10,885,238.  Upon information and belief, Defendant Gupta is a citizen of California.

19.  Defendant J. Peter Bardwick ("Bardwick") was the Chief Financial Officer ("CFO") of the Company from September 2011 to September 2014.  Bardwick is a defendant in the Securities Class Action.  On October 1, 2014, the Company executed a consulting agreement with Bardwick, pursuant to which he continues to provide services to the Company.  During the Relevant Period, Bardwick misappropriated Company non-public information by selling 17,500 personally held shares of Rocket Fuel stock at artificially inflated prices, for proceeds of approximately $1,019,462.50.  Upon information and belief, Defendant Bardwick is a citizen of California.

20.  Defendant Susan L. Bostrom ("Bostrom") has served as a member of the Company's Board since February 2013.  Bostrom is a defendant in the Securities Class Action.  Bostrom is a member of the Compensation Committee.  Bostrom received total compensation from Rocket Fuel of $946,208 in 2013 and $184,993 in 2014.  Upon information and belief, Defendant Bostrom is a citizen of California.

21.     Defendant Ronald E.F. Codd ("Codd") has served as a member of the Company's Board since February 2012.  Codd is a defendant in the Securities Class Action.  Codd is a member of the Audit Committee and the Nominating and Governance Committee.  Codd received total compensation from Rocket Fuel of $122,955 in 2013 and $192,993 in 2014.  Upon information and belief, Defendant Codd is a citizen of California.

22.     Defendant William Ericson ("Ericson") has been a member of the Company's Board since May 2008.  Ericson is a defendant in the Securities Class Action.  Ericson is a member of the Compensation Committee and the Nominating and Governance Committee.  Ericson received total compensation from Rocket Fuel of $120,977 in 2013 and $185,993 in 2014.  As of April 15, 2015, Ericson held over 22% of the Company's stock shares.  Further, during the Relevant Period, Ericson misappropriated Company non-public information by selling 1,656,776 personally held shares of Rocket Fuel stock at artificially inflated prices, for proceeds of approximately $101,063,336.00.  Upon information and belief, Defendant Ericson is a citizen of California.

23.     Defendant Richard Frankel ("Frankel") has been the Company's Executive Vice President since October 2015.  Frankel was the Company's President from May 2008 to October 2015, the CFO from March 2008 to February 2009, and has been a member of the Company's Board since March 2008.  Frankel was also a co-founder of the Company.  Frankel is a defendant in the Securities Class Action.  Ericson is a member of the Compensation Committee and the Nominating and Governance Committee.  Frankel received total compensation from Rocket Fuel of $1,498,988 in 2013 and $2,923,397 in 2014.  Further, during the Relevant Period, Frankel misappropriated Company non-public information by selling 254,323 personally held shares of Rocket Fuel stock at artificially inflated prices, for proceeds of approximately $14,815,586.37.  Upon information and belief, Defendant Frankel is a citizen of California.

24.     Defendant John Gardner ("Gardner") has been a member of the Company's Board since July 2011.  Gardner is a defendant in the Securities Class Action.  Gardner received total compensation from Rocket Fuel of $119,988 in 2013 and $182,493 in 2014.

Gardner was a member of the Audit Committee until 2015. Further, during the Relevant Period, Frankel misappropriated Company non-public information by selling 407,693 personally held shares of Rocket Fuel stock at artificially inflated prices, for proceeds of approximately $23,750,155.72. Upon information and belief, Defendant Gardner is a citizen of California.

25.    Defendant Clark Kokich ("Kokich") has been a member of the Company's Board since April 2011. Kokich is a defendant in the Securities Class Action. Kokich is a member of the Audit Committee and the Nominating and Governance Committee. Kokich received total compensation from Rocket Fuel of $125,075 in 2013 and $200,493 in 2014. Upon information and belief, Defendant Kokich is a citizen of Washington.

26.    Defendant Randy Wootton ("Wootton") has been the Company's CEO since November 2015, and joined the Company as Chief Revenue Officer in March 2015. Upon information and belief, Defendant Wootton is a citizen of California.

27.    Defendant Monte Zweben ("Zweben") has been a member of the Company's Board since March 2010. Zweben also served as the Company's interim CEO from March 2015 to November 2015. Zweben is a defendant in the Securities Class Action. Zweben received total compensation from Rocket Fuel of $119,281 in 2013 and $179,993 in 2014. Further, during the Relevant Period, Zweben misappropriated Company non-public information by selling 12,996 personally held shares of Rocket Fuel stock at artificially inflated prices, for proceeds of approximately $757,081.98. Upon information and belief, Defendant Zweben is a citizen of California.

28.    Defendants identified in ¶¶ 17-27 are sometimes referred to herein as the "Individual Defendants."

29.    Defendants identified in ¶¶ 17 and 20-27 are sometimes referred to herein as the "Director Defendants."

30.    Defendants identified in ¶¶ 21 and 24-25 are sometimes referred to herein as the "Audit Committee Defendants."

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

31.     Defendants identified in ¶¶ 17-19, 22-24 and 27 are sometimes referred to herein as the "Insider Selling Defendants."

32.     As directors and/or officers of Rocket Fuel, the Individual Defendants either knew, consciously disregarded, were reckless and grossly negligent in not knowing or should have known the adverse, non-public information about Rocket Fuel's business, operations, prospects, internal controls, and financial results because of their access to internal corporate documents, conversations and connections with one another as well as other corporate officers and employees, attendance at Board meetings, and committee meetings thereof, as well as reports and other information provided to them in connection therewith.   The Individual Defendants either participated in, caused, failed to correct, and/or failed to take action to remedy the harm inflicted upon Rocket Fuel through the issuance of the improper statements disseminated via press releases, SEC filings, and other means to the press, securities analysts, and Rocket Fuel stockholders.

## SUBSTANTIVE ALLEGATIONS

**A.     Background**

33.     Rocket Fuel is a technology company that has developed a predictive modeling and automated decision-making platform based on AI.  The Company's platform uses AI to determine how to purchase advertising to optimize returns on investment.

34.     Rocket Fuel was incorporated as a Delaware corporation in 2008 and is headquartered in Redwood City, California.  The Company's common stock has been listed on the NASDAQ Stock Market since September 2013.

35.     The online advertising industry is plagued by automated robotic traffic ("bot traffic" or "fraudulent traffic") which mimics the actions of human users in order to generate false results.  In February 2013, an article in *AdWeek* entitled "The Bots Are Taking Over" reported that bot traffic created costs of $1-2 billion in display advertising in the fourth quarter of 2012.  On September 30, 2013, in an article entitled "Phony Web Traffic Tricks Digital Ads," the *Wall Street Journal* explained that thousands of dubious websites have appeared on the internet to "take advantage of the simple truth that advertisers pay to be seen"

which "creates an incentive for fraudsters to erect sites with phony traffic, collecting payments."

36.     Even before Rocket Fuel's initial public offering ("IPO") on September 20, 2013, the Individual Defendants caused the Company to tout its proprietary AI technology, which it claimed could ensure "both ROI [return on investment] and peace of mind for brands."

37.     Leading up to, and during the Relevant Period, Rocket Fuel offered periodic positive assessments of the Company's technological capabilities, claiming that the quality of Rocket Fuel's products would create customers.   For example, the Individual Defendants caused the Company to represent that: "[O]ur Real-Time Brand Safety Shield provides the highest levels of brand assurance to our clients.   At Rocket Fuel, we take a proactive approach, with three layers of defense that block bad sites and pages before we ever serve a single ad on them."

38.     The IPO prospectus included a risk factor acknowledging that the Company's financial success was dependent upon Rocket Fuel's ability to detect and respond to fraudulent practices, stating: "If we fail to detect fraud or serve our advertisers' advertisements on undesirable websites, our reputation will suffer, which would harm our brand and reputation and negatively impact our business, financial condition and results of operations."

39.     Yet despite their awareness of the importance of ensuring that all of Rocket Fuel's claims were accurate, the Individual Defendants caused the Company to continue to represent that Rocket Fuel's proprietary technology could eliminate fraudulent bot traffic, even though this was not the case.

40.     The Company's misleading statements led to Rocket Fuel's highly successful IPO, which closed at almost $60 per share, more than double the offering price of $29 per share.

/ / /

/ / /

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

**B.     The Secondary Offering**

41.     The IPO agreements included a provision that the Company's directors, officers, and other insiders would not offer or sell "any shares of common stock without the permission of the representatives of the underwriters for a period of 180 days" from the date of the prospectus.  According to this agreement, the "lock-up period" would end on March 18, 2014.

42.     However, after the Company's stock continued to rise following the IPO, reaching an interday high of $71.89 on January 23, 2014, the Company's insiders acted to reap additional profits.  By January 27, 2014, the Company's insiders obtained an early release from the lock-up.

43.     In addition, the Company's insiders took advantage of the high stock price to announce a secondary offering of 5 million shares at a price of $61 per share (the "Secondary Offering"), and filed a prospectus on January 31, 2014 with the SEC.

44.     Pursuant to the Secondary Offering, certain Company insiders sold over 2.85 million shares of stock between January 30, 2014 and February 4, 2014, at an average price per share of approximately $59.85, creating hundreds of millions of dollars in profits for themselves.

45.     The market reacted negatively to the insider stock dump, and the stock price began a slow decline.  By March 18, 2014, the date that the lock-up should have expired, the stock price was down to $50.62.  Therefore, by terminating the lock-up ahead of schedule, the Company's insiders pocketed extra profits of more than $26 million.

46.     By May 2014, the stock price was down to less than $30.

**C.     Improper Statements**

47.     Following the IPO, the Individual Defendants continued to cause the Company to issue false and misleading statements.  On November 6, 2013, the Individual Defendants caused Rocket Fuel to post on its website: "Rocket Fuel undermines fraudulent practices and *makes sure con artists always leave empty handed*.  Using the same powerful technology that

optimizes our clients' campaigns, ***Rocket Fuel is able to identify and eliminate all threats*** before serving a single ad."

48.     On November 13, 2013, the Company filed its quarterly report for the quarter ending September 30, 2013, in which the Individual Defendants caused the Company to report "record revenue" and "strong growth."   Following this news, the Company's stock price rose from $51.01 to $54.89 in one day.

49.     The Individual Defendants caused the Company to continue to represent that Rocket Fuel's proprietary technology was superior to the technology provided by competitors, claiming that the Company provided high-quality advertising that could eliminate bot traffic.

50.     On December 4, 2013, at the NASDAQ OMX Investor Program, Bardwick emphasized the Company's ability to filter bot traffic, stating "***We have proprietary technology about filtering for bots.   We also filter for quality***."   Further, Bardwick distinguished Rocket Fuel from other companies, stating that "there'll be a cat-and-mouse game, but I think the advertisers and then ***certain players like us will continue to stay ahead of the people who are trying to make a quick buck***."

51.     On January 22, 2014, the Individual Defendants caused Rocket Fuel to issue a press release announcing the Company's results for the fourth quarter of 2013.   The press release also provided guidance for the first quarter of 2014 in the range of $73 million to $76 million, and revenue in the range of $420 million to $435 million for the full year 2014. The press release did not disclose that the Company was failing to identify and filter certain fraudulent bot traffic.

52.     In response to the misleading statements and omissions made by the Individual Defendants, the Company's stock price continued to rise, reaching an interday high on January 23, 2014 of $71.89.

53.     On February 28, 2014, the Individual Defendants caused the Company to file Form 10-K with the SEC, signed by John, Bolstrom, Codd, Ericson, Frankel, Gardner, Kokich, and Zweben.   The Form 10-K included disclosures acknowledging that the Company's financial condition and operations would be negatively impacted if Rocket Fuel

failed to detect fraudulent bot traffic, but failed to disclose that Rocket Fuel was in fact unable to detect and filter all such traffic.

54. On May 26, 2014, *The Financial Times* reported that an investigation by the UK company Telemetry, on behalf of car maker Mercedes-Benz, discovered that ads were "viewed more by fraudster robots than humans." Telemetry's investigation found that "ads were inadvertently placed on to fraudulent websites by Rocket Fuel," and that in a sample of 365,000 ad impressions, 57% were viewed not by people, but only by automated bot programs.

55. As *The Financial Times* explained, "the findings raise questions about ***Rocket Fuel's assertions on its website that it 'makes sure the 'bad actors' always leave empty handed*.'"

56. The Individual Defendants caused Rocket Fuel to respond by downplaying the report, saying that the findings were only from a small sample and that the numbers might be incorrect, and released a statement stating: "Bots are a real problem, but less so than sensational headlines on top of non-news." The Company's response also claimed that: "Rocket Fuel takes an aggressive posture to screen bots out of the ad space… We reject approximately 40% of all ad space daily due to its failure to pass our own bot and brand-safety screens."

57. These statements from the Company, however, directly contradicted the misleading claims on the Rocket Fuel website, which stated that the Company's technology would ensure that bad actors would "***always*** leave empty handed."

**<u>REASONS STATEMENTS WERE IMPROPER</u>**

58. The true facts, which were known or were recklessly disregarded by the Individual Defendants but concealed from the investing public, were as follows:

(a) Rocket Fuel was unable to adequately identify and eliminate the fraudulent "bot traffic" used to artificially increase advertising views;

(b) the Company knew of the substantial negative impact that this bot traffic was having on the market;

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

(c)     by overstating Rocket Fuel's ability to block bot traffic, the Company was incurring material risks to its financial projections and outlook, including from the loss of customers; and

(d)     as a result, Rocket Fuel's financial projections and overall Company outlook during the Relevant Period were materially false and misleading at all relevant times.

59.     As a result of the Individual Defendants' false and misleading statements and omissions, Rocket Fuel shares traded at artificially inflated prices during the Relevant Period. As detailed below, once the true facts regarding the Company's financial projections and overall Company outlook were revealed to the market, Rocket Fuel stock collapsed a total of $63.35 per share, closing at a low of just $3.08 on December 11, 2015, *a loss of over 95%* from the Relevant Period high of $66.43 on October 18, 2013, and erasing billions of dollars in market capitalization.

## THE TRUTH IS REVEALED

60.     On August 5, 2014, the Individual Defendants caused Rocket Fuel to issue a press release announcing that the Company had significantly lowered its guidance for 2014 to between $385 million and $405 million, sharply lower than the previously announced guidance between $420 million and $435 million.

61.     The next day, on a conference call with investors, Defendant John stated: "[W]e were surprised by the strength of trends in passing our bookings in June and we now feel our full year guidance should take into account slightly lower sales productivity" based on factors including "buzz this summer about bot traffic and low quality ad space on digital exchanges."

62.     The Company continues to suffer for the damages that the Individual Defendants have caused to Rocket Fuel.  In addition to the costs of defending the Securities Class Action (and potential damages in that action), the stock price has continued to decline, reaching a new low of $3.08 on December 11, 2015.

63.     As a result of the Individual Defendants' false and misleading statements and omissions, many millions of dollars were erased from the Company's market capitalization, and the Company continues to suffer damages.

## INSIDER SELLING

64.     Certain Individual Defendants took advantage of the artificially inflated prices to sell their Rocket Fuel shares for substantial proceeds.  These Insider Selling Defendants sold over $150 million of personally held common stock during the Relevant Period, as detailed below.  Further, as reported by *InsiderTradingWire* in April 2014, most of these sales took place in the time period between February 3, 2014 and February 7, 2014, and led to a new low in the stock price, reducing the Company's market cap by almost $1 billion in just six months.

65.     Defendant John was a member of the Company's Board, as well as the Company's CEO and Chairman of the Board.  John was aware of material, non-public information regarding the Company's inability to identify and eliminate fraudulent bot traffic, and the inaccuracy of Rocket Fuel's disclosures in the Company's press releases and public filings.  While in possession of this information, John sold 307,877 personally held shares of Rocket Fuel stock at artificially inflated prices, for proceeds of approximately $17,935,374.64.  John's sales were timed to maximize profits from the Company's then artificially inflated stock price.

66.     Defendant Gupta is employed by the Company as Vice President, and was also a co-founder of the Company.  Gupta was aware of material, non-public information regarding the Company's inability to identify and eliminate fraudulent bot traffic, and the inaccuracy of Rocket Fuel's disclosures in the Company's press releases and public filings.  While in possession of this information, Gupta sold 186,855 personally held shares of Rocket Fuel stock at artificially inflated prices, for proceeds of approximately $10,885,238.  Gupta's sales were timed to maximize profits from the Company's then artificially inflated stock price.

14
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

67.     Defendant Bardwick was the Company's CFO.  Bardwick was aware of material, non-public information regarding the Company's inability to identify and eliminate fraudulent bot traffic, and the inaccuracy of Rocket Fuel's disclosures in the Company's press releases and public filings.  While in possession of this information, Bardwick sold 17,500 personally held shares of Rocket Fuel stock at artificially inflated prices, for proceeds of approximately $1,019,462.50.  Bardwick's sales were timed to maximize profits from the Company's then artificially inflated stock price.

68.     Defendant Ericson was a member of the Company's Board.  Ericson was aware of material, non-public information regarding the Company's inability to identify and eliminate fraudulent bot traffic, and the inaccuracy of Rocket Fuel's disclosures in the Company's press releases and public filings.  While in possession of this information, Ericson sold 1,656,776 personally held shares of Rocket Fuel stock at artificially inflated prices, for proceeds of approximately $101,063,336.00.  Ericson's sales were timed to maximize profits from the Company's then artificially inflated stock price.

69.     Defendant Frankel was the Company's CFO and President, and is currently the Company's Executive Vice President.  Frankel was aware of material, non-public information regarding the Company's inability to identify and eliminate fraudulent bot traffic, and the inaccuracy of Rocket Fuel's disclosures in the Company's press releases and public filings. While in possession of this information, Frankel sold 254,323 personally held shares of Rocket Fuel stock at artificially inflated prices, for proceeds of approximately $14,815,586.37.  Frankel's sales were timed to maximize profits from the Company's then artificially inflated stock price.

70.     Defendant Gardner was a member of the Company's Board.  Gardner was aware of material, non-public information regarding the Company's inability to identify and eliminate fraudulent bot traffic, and the inaccuracy of Rocket Fuel's disclosures in the Company's press releases and public filings.  While in possession of this information, Gardner sold 407,693 personally held shares of Rocket Fuel stock at artificially inflated

prices, for proceeds of approximately $23,750,155.72.   Gardner's sales were timed to maximize profits from the Company's then artificially inflated stock price.

71.   Defendant Zweben was a member of the Company's Board.   Zweben was aware of material, non-public information regarding the Company's inability to identify and eliminate fraudulent bot traffic, and the inaccuracy of Rocket Fuel's disclosures in the Company's press releases and public filings.   While in possession of this information, Zweben sold 12,996 personally held shares of Rocket Fuel stock at artificially inflated prices, for proceeds of approximately $757,081.98.   Zweben's sales were timed to maximize profits from the Company's then artificially inflated stock price.

72.   Each of Defendants John, Gupta, Bardwick, Ericson, Frankel, Gardner, and Zweben engaged in insider trading activity at a time when each of them knew of adverse, material, non-public information about the Company's financial outlook that was not being disclosed to the shareholders.   On the basis of this non-public information, each of Defendants John, Gupta, Bardwick, Ericson, Frankel, Gardner, and Zweben timed their sales to maximize profit from Rocket Fuel's then artificially inflated stock price.   After the irregularities in the Company's financial reporting were revealed, the Company's stock price declined.

73.   In sum, the Insider Selling Defendants sold over $150 million worth of stock at artificially inflated prices during the Relevant Period, based on their knowledge of material non-public information about the Company.

**FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

74.   By reason of their positions as officers, directors, and/or fiduciaries of Rocket Fuel and because of their ability to control the business and corporate affairs of Rocket Fuel, the Individual Defendants owed and owe the Company and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Rocket Fuel in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Rocket Fuel and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

75.     Each director and officer of the Company owes to Rocket Fuel and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, performance, management, projections, and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

## CONTROL, ACCESS, AND AUTHORITY

76.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Rocket Fuel, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Rocket Fuel.

77.     Because of their advisory, executive, managerial, and directorial positions with Rocket Fuel, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and improper representations of Rocket Fuel.

78.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Rocket Fuel, and was at all times acting within the course and scope of such agency.

## REASONABLE AND PRUDENT SUPERVISION

79.     To discharge their duties, the officers and directors of Rocket Fuel were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Rocket Fuel were required to, among other things:

(a)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(b)     conduct the affairs of the Company in an efficient, business-like manner so as

to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results;

(d)     remain informed as to how Rocket Fuel conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws; and

(e)     ensure that Rocket Fuel was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

## **BREACHES OF DUTIES**

80.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to Rocket Fuel and to its shareholders the fiduciary duty of loyalty and good faith and the exercise of due care and diligence in the management and administration of the affairs of Rocket Fuel, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Rocket Fuel, the absence of good faith on their part, and a reckless disregard for their duties to Rocket Fuel and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to Rocket Fuel.

81.     The Individual Defendants each breached their duty of loyalty and good faith by allowing Defendants to cause, or by themselves causing, the Company to make false and/or misleading statements regarding the Company's current and future business prospects and outlook.  In addition, as a result of the Individual Defendants' illegal actions and course of conduct, the Company is now the subject of a class action lawsuit that alleges violations of

1  the federal securities laws.  As a result, Rocket Fuel has expended, and will continue to

2  expend, significant sums of money to rectify the Individual Defendants' wrongdoing.

3  **CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

4  82.    In committing the wrongful acts alleged herein, the Individual Defendants have

5  pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert

6  with and conspired with one another in furtherance of their wrongdoing.   The Individual

7  Defendants further aided and abetted and/or assisted each other in breaching their respective

8  duties.

9  83.    During all times relevant hereto, the Individual Defendants collectively and

10  individually initiated a course of conduct that was designed to mislead shareholders into

11  believing the Company's financial projections and overall Company outlook.  In furtherance

12  of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and

13  individually took the actions set forth herein.

14  84.    The purpose and effect of the Individual Defendants' conspiracy, common

15  enterprise, and/or common course of conduct was, among other things, to: (a) disguise the

16  Individual Defendants' violations of law, including breaches of fiduciary duty and unjust

17  enrichment; and (b) disguise and misrepresent the Company's current and future business

18  prospects.

19  85.    The Individual Defendants accomplished their conspiracy, common enterprise,

20  and/or common course of conduct by causing the Company to purposefully, recklessly, or

21  negligently release improper statements.  Because the actions described herein occurred under

22  the authority of the Board, each of the Director Defendants was a direct, necessary, and

23  substantial participant in the conspiracy, common enterprise, and/or common course of

24  conduct complained of herein.

25  86.    Each of the Individual Defendants aided and abetted and rendered substantial

26  assistance in the wrongs complained of herein.  In taking such actions to substantially assist

27  the commissions of the wrongdoing complained of herein, each Individual Defendant acted

28  with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that

wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## DAMAGES TO ROCKET FUEL

87.     As a result of the Individual Defendants' wrongful conduct, Rocket Fuel disseminated false and misleading statements.  The improper statements have devastated Rocket Fuel's credibility.  Additionally, Rocket Fuel is now the subject of the Securities Class Action.  The Company will face substantial costs in connection with an investigation and the lawsuit.

88.     As a direct and proximate result of the Individual Defendants' actions as alleged above, Rocket Fuel's market capitalization has been substantially damaged.

89.     Further, as a direct and proximate result of the Individual Defendants' conduct, Rocket Fuel has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

(a)     costs incurred in investigating and defending Rocket Fuel and certain officers in a class action lawsuit, plus potentially tens of millions of dollars — or more — in settlement or to satisfy an adverse judgment;

(b)     costs incurred from compensation and benefits paid to the Individual Defendants, which compensation was based at least in part on Rocket Fuel's artificially-inflated stock price and inflated revenues; and

(c)     costs incurred from the loss of the Company's customers' confidence in Rocket Fuel services.

90.     Moreover, these actions have irreparably damaged Rocket Fuel's corporate image and goodwill.  For at least the foreseeable future, Rocket Fuel will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Rocket Fuel's ability to raise equity capital or debt on favorable terms in the future is now impaired.

/ / /

/ / /

1

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

2       91.     Plaintiff brings this action derivatively in the right and for the benefit of

3   Rocket Fuel to redress injuries suffered, and to be suffered, by Rocket Fuel as a direct result

4   of the Individual Defendants' breaches of fiduciary duty, corporate waste, and unjust

5   enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  Rocket

6   Fuel is named as a nominal defendant solely in a derivative capacity.

7       92.     Plaintiff will adequately and fairly represent the interests of Rocket Fuel in

8   enforcing and prosecuting its rights.

9       93.     Plaintiff was a shareholder of Rocket Fuel common stock at the time of the

10   wrongdoing of which Plaintiff complains and has been a shareholder continuously throughout

11   the Relevant Period.

12       94.     Plaintiff did not make a pre-suit demand on the Board to pursue this action,

13   because such a demand would have been a futile and wasteful act.

14       95.     At the time this action was commenced, the Board of Rocket Fuel consisted of

15   the following eight (8) directors: Defendants Bostrom, Codd, Ericson, Frankel, Kokich,

16   Wootton, and Zweben, and non-Defendant John Lewis.

17   **A.      Demand is Futile as to All Director Defendants Because the Director Defendants
       Face a Substantial Likelihood of Liability**

18

19       96.     Each of the Director Defendants faces a substantial likelihood of liability for

20   their individual misconduct.  The Director Defendants were directors throughout the Relevant

21   Period, and as such had a fiduciary duty to ensure that the Company's SEC filings, press

22   releases, and other public statements and presentations on behalf of the Company concerning

23   its business, operations, prospects, internal controls, and financial statements were accurate.

24       97.     Moreover, the Director Defendants, as directors (and, in some cases, also as

25   Audit Committee members) owed a duty to, in good faith and with due diligence, exercise

26   reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls

27   and/or internal auditing and accounting controls over financial reporting were sufficiently

28   robust and effective (and/or were being implemented effectively), and to ensure that the Audit

21

1   Committee's duties were being discharged in good faith and with the required diligence and

2   due care.  Instead, they knowingly and/or with reckless disregard reviewed, authorized and/or

3   caused the publication of materially false and misleading statements throughout the Relevant

4   Period that caused the Company's stock to trade at artificially inflated prices.

5          98.    The Director Defendants also wasted corporate assets by paying improper

6   compensation, bonuses, and severance to certain of the Company's executive officers and

7   directors.  The handsome remunerations paid to wayward fiduciaries who proceeded to breach

8   their fiduciary duties to the Company was improper and unnecessary, and no person of

9   ordinary, sound business judgment would view this exchange of consideration for services

10  rendered as fair or reasonable.

11         99.    The Director Defendants' making or authorization of false and misleading

12  statements throughout the Relevant Period, failure to timely correct such statements, failure to

13  take necessary and appropriate steps to ensure that the Company's internal controls or internal

14  auditing and accounting controls were sufficiently robust and effective (and/or were being

15  implemented effectively), failure to take necessary and appropriate steps to ensure that the

16  Audit Committee's duties were being discharged in good faith and with the required

17  diligence, and/or acts of corporate waste and abuse of control constitute breaches of fiduciary

18  duties, for which the Director Defendants face a substantial likelihood of liability.

19         100.   If the Director Defendants were to bring a suit on behalf of Rocket Fuel to

20  recover damages sustained as a result of this misconduct, they would expose themselves to

21  significant liability.  This is something they will not do.  For this reason, demand is futile.

22  **B.     Demand is Futile as to the Audit Committee Defendants**

23         101.   Audit Committee Defendants Codd, Gardner, and Kokich were responsible for,

24  among other things, reviewing and approving quarterly and annual financial statements and

25  earnings press releases, overseeing Rocket Fuel's internal controls over financial reporting,

26  and discharging their other duties described herein.  Despite these duties, Codd, Gardner, and

27  Kokich knowingly or recklessly reviewed and approved, or failed to exercise due diligence

28  and reasonable care in reviewing and preventing the dissemination of false and/or materially

1    misleading earnings press releases and earnings guidance and failed in their specific duties to

2    ensure that the Company's internal controls over financial reporting were sufficient and that

3    statements made by the Company regarding its business, operations, prospects, internal

4    controls, and financial statements were accurate.   Accordingly, the Audit Committee

5    Defendants face a sufficiently substantial likelihood of liability for breach of their fiduciary

6    duties of loyalty and good faith. Any demand upon the Audit Committee Defendants therefore

7    is futile.

8    **C.     Demand is Futile Based on Insider Selling**

9         102.   Demand is futile as to Ericson, Frankel, and Zweben because, as alleged

10   herein, each engaged in insider trading activity at a time when each of them knew of adverse,

11   material, non-public information about the Company's financial outlook that was not being

12   disclosed to the shareholders.

13        103.   On the basis of this non-public information, each of Ericson, Frankel, and

14   Zweben timed their sales to maximize profit from Rocket Fuel's then artificially inflated stock

15   price, the value of which plummeted after the irregularities in the Company's financial

16   reporting were revealed.

17        104.   As a result of these illicit insider sales, defendants Ericson, Frankel, and

18   Zweben each received direct financial benefits not shared with Rocket Fuel shareholders, and

19   are, therefore, each directly interested in a demand.  Further, defendants Ericson, Frankel, and

20   Zweben each are interested in a demand because they face a substantial likelihood of liability

21   for their breaches of fiduciary duties of loyalty and good faith based on their challenged

22   insider sales.  As such, demand upon Ericson, Frankel, and Zweben is futile.

23   **D.     Demand is Futile as to Wooton, Frankel, and Zweben for Additional Reasons**

24        105.   In addition to the reasons discussed herein as to why demand is futile as to all

25   Director Defendants, demand is futile as to Wootton, Frankel, and Zweben because there is

26   reason to doubt that Wootton, Frankel, and Zweben are independent directors.

27        106.   Specifically, Wootton's principle professional occupation is his employment

28   with Rocket Fuel as its CEO and Chairman, and thus, is a non-independent director.  In these

roles, Wootton is paid an annual base salary of $430,000, is eligible for a bonus of 100% of his base salary under an executive incentive compensation plan and a grant of stock option to purchase 500,000 shares of stock. As leader of the Company responsible for fraud in the making of false and misleading statements of material fact as alleged herein, Wootton is not disinterested and is certainly not independent. He is beholden to the Company's Board, the majority of which is liable for breach of fiduciary duties, and which is thus not disinterested, and which exert their controlling ownership over the Company. Defendant Wootton is thus not disinterested or independent, faces a substantial likelihood of liability, and demand upon him is futile and, therefore, excused.

107. Further, because of his roles as Co-Founder and President of the Company, Frankel is not an independent director. In fact, the Company's most recent Proxy filed with the SEC and disseminated to shareholders on April 27, 2015, implicitly acknowledges as much by not listing Frankel as an independent director. Additionally, Defendant Frankel's annual compensation (including salary and stock awards) was $2,923,397 for 2014, and $1,498,988 for 2013. Defendant Frankel beneficially owns 2,655,232 shares or 6.27% of the Company's outstanding stock; he thus has an interest in keeping the Company's stock price as high as possible. Further, the most plausible inference is that the wrongdoing alleged herein was widespread and systemic at the Company, and Frankel knowingly engaged in, facilitated, concealed, and failed to disclose the wrongdoing, or recklessly turned a blind eye to it. As such, for these additional reasons, Frankel is not disinterested or independent, and demand upon him is futile and, therefore, excused.

108. Defendant Zweben is Executive Chairman of the Company and the Board. Zweben received from the Company, for interim services as chief executive in 2015, two bonus payments of $200,000 as well as stock options. For his services as a member of the Board of the Company, Zweben also earned compensation of $179,993 in fees and stock awards for the year ended December 31, 2014. He is beholden to the Company's Board, the majority of which is liable for breach of fiduciary duties, and which is thus not disinterested, and which exert their controlling ownership over the Company. As Executive Chairman of

24

the Company, Defendant Zweben breached his fiduciary duties.  Further, the most plausible inference is that the wrongdoing alleged herein was widespread and systemic at the Company, and Zweben knowingly engaged in, facilitated, concealed, and failed to disclose the wrongdoing, or recklessly turned a blind eye to it.  Zweben is additionally named as a defendant in the federal securities class action lawsuit.  Defendant Zweben is thus not disinterested or independent, faces a substantial likelihood of liability, and demand upon him is futile and, therefore, excused.

**E.     Demand is Futile for Additional Reasons**

109.   Rocket Fuel's Board has already demonstrated that it cannot independently and disinterestedly consider a pre-suit demand to bring the claims set forth herein.  Despite the wrongdoing of Defendant John, the Board has seen fit to bestow ***benefits*** for his departure from the Company, including a substantial severance package.

110.   If Rocket Fuel's current officers and directors are protected against personal liability for their breaches of fiduciary duties alleged in this Complaint by Directors and Officers Liability Insurance ("D&O Insurance"), they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the shareholders.  However, Plaintiff is informed and believes that the D&O Insurance policies covering the Director Defendants in this case contain provisions that eliminate coverage for any action brought directly by Rocket Fuel against the Director Defendants, known as the "insured versus insured exclusion."  As a result, if the Director Defendants were to sue themselves or certain of the officers of Rocket Fuel, there would be no D&O Insurance protection, and thus, this is a further reason why they will not bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery.  Therefore, the Director Defendants cannot be expected to file the claims asserted in this derivative lawsuit because such claims would not be covered under the Company's D&O Insurance policy.

111.   Under the factual circumstances described herein, the Director Defendants are more interested in protecting themselves than they are in protecting Rocket Fuel by

prosecuting this action.   Therefore, demand on Rocket Fuel and its Board is futile and is excused.

112.    Rocket Fuel has been and will continue to be exposed to significant losses due to the Director Defendants' wrongdoing.   Yet, the Director Defendants have not filed any lawsuits against themselves or others who were responsible for the wrongful conduct.   Thus, the Director Defendants are breaching their fiduciary duties to the Company and face a sufficiently substantial likelihood of liability for their breaches, rendering any demand upon them futile.

113.    Thus, demand is futile as to Director Defendants Bostrom, Codd, Ericson, Frankel, Kokich, Wootton, and Zweben.

## COUNT I

### Against the Individual Defendants for Breaches of Fiduciary Duties

114.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

115.    The Individual Defendants owed and owe Rocket Fuel fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe Rocket Fuel the highest obligation of good faith, fair dealing, loyalty, due care, reasonable inquiry, oversight and supervision.

116.    The Individual Defendants violated and breached their fiduciary duties of good faith, fair dealing, loyalty, due care, reasonable inquiry, oversight and supervision.

117.    The Individual Defendants each knowingly, recklessly or negligently approved the issuance of false statements that misrepresented and failed to disclose material information concerning the Company.   These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

118.    As executive officers of Rocket Fuel and members of the Rocket Fuel Board, the Individual Defendants were directly responsible for authorizing or permitting the authorization of, or failing to monitor, the practices which resulted in violations of the law as

alleged herein.  Each of them had knowledge of and actively participated in and/or approved of or acquiesced in the wrongdoings alleged herein or abdicated his/her responsibilities with respect to these wrongdoings.  The alleged acts of wrongdoing have subjected Rocket Fuel to unreasonable risks of loss and expenses.

119.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Rocket Fuel has sustained significant damages.   As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

120.    By reason of the foregoing, Rocket Fuel was damaged.

121.    Plaintiff, on behalf of Rocket Fuel, has no adequate remedy at law.

## COUNT II

### Against the Individual Defendants for Unjust Enrichment

122.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

123.    By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Rocket Fuel.

124.    The Individual Defendants were unjustly enriched as a result of the compensation they received while breaching their fiduciary duties owed to Rocket Fuel.

125.    By reason of the foregoing, Rocket Fuel was damaged.

126.    Plaintiff, as a shareholder and representative of Rocket Fuel, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits, and other compensation obtained by the Individual Defendants from their wrongful conduct and fiduciary breaches.

127.    Plaintiff, on behalf of Rocket Fuel, has no adequate remedy at law.

## COUNT III

### Against the Individual Defendants for Corporate Waste

128.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

129.    The wrongful conduct alleged regarding the issuance of false and misleading statements, was continuous, connected, and ongoing throughout the Relevant Period.   It resulted in continuous, connected, and ongoing harm to the Company.

130.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (i) paying excessive compensation, bonuses, and termination payments to certain of its executive officers; (ii) awarding self-interested stock options to certain officers and directors; and (iii) incurring potentially millions of dollars of legal liability and/or legal costs to defend Defendants' unlawful actions, including in the Securities Class Action.

131.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

132.    By reason of the foregoing, Rocket Fuel was damaged.

133.    Plaintiff, on behalf of Rocket Fuel, has no adequate remedy at law.

## COUNT IV

**Against the Individual Defendants for Aiding and Abetting Fiduciary Violations**

134.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

135.    The wrongful conduct alleged herein was continuous, connected, and on-going since at least October 2013.  The Individual Defendants' misconduct resulted in continuous, connected, and on-going harm to the Company.

136.    The Individual Defendants had the power and/or ability to, and did, directly or indirectly control or influence the Company's general affairs, including the content of public statements disseminated by Rocket Fuel and had the power and/or ability, directly or indirectly, to control or influence one another.

137.    Each Individual Defendant is jointly and severally liable to the same extent as any other Defendant is liable for breaches of fiduciary duties as set forth herein or violations of any other laws.

138.    By reason of the foregoing, Rocket Fuel was damaged.

28

139.   Plaintiff, on behalf of Rocket Fuel, has no adequate remedy at law.

**COUNT V**

**Against the Insider Selling Defendants for Breach of Fiduciary Duty
for Insider Selling and Misappropriation of Information**

140.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

141.   At the time the Insider Selling Defendants sold their Rocket Fuel stock, they knew the information described above, and sold Rocket Fuel stock on the basis of such information.

142.   The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects.  It was a proprietary asset belonging to the Company, which the Insider Selling Defendants misappropriated to their own benefit when they sold Rocket Fuel stock.

143.   The Insider Selling Defendants' sales of stock while in possession and control of this material, adverse, non-public information was a breach of their fiduciary duties of loyalty and good faith.

144.   Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

145.   Plaintiff, on behalf of Rocket Fuel, has no adequate remedy at law.

**COUNT VI**

**Against the Insider Selling Defendants for Violation of Cal. Corp. Code § 25402**

146.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

147.   At the time the Insider Selling Defendants sold their Rocket Fuel common stock, they were officers and/or directors of Rocket Fuel, positions which gave them access,

1    directly or indirectly, to material information about Rocket Fuel not generally available to the

2    public.

3    148.    The Insider Selling Defendants knew these facts were not intended to be

4    available to the public.  Had such information been generally available to the public, it would

5    have significantly reduced the market price of Rocket Fuel common stock.

6    149.    The Insider Selling Defendants had knowledge of material, adverse, non-public

7    information and sold their Rocket Fuel common stock in violation of California Corporations

8    Code § 25402.

9    150.    The Insider Selling Defendants are liable for damages in an amount up to three

10   times the difference between the price at which the security was sold and the market value

11   which the security would have had at the time of the sale if the information known to the

12   Insider Selling Defendants had been publicly disseminated prior to that time and a reasonable

13   time had elapsed for the market to absorb the information—pursuant to California

14   Corporations Code § 25502.5.

15   151.    On information and belief, Plaintiff alleges that Rocket Fuel has total assets in

16   excess of one million dollars and has a class of equity security held of record by 500 or more

17   persons.

18   152.    The Insider Selling Defendants are also liable for reasonable attorney's fees

19   and costs under California Corporations Code § 25502.5.

20   **PRAYER FOR RELIEF**

21   WHEREFORE, Plaintiff demands judgment in the Company's favor against all

22   Defendants as follows:

23   A.    Declaring that Plaintiff may maintain this action on behalf of Rocket Fuel and

24   that Plaintiff is an adequate representative of the Company;

25   B.    Declaring that Defendants have breached their fiduciary duties to Rocket Fuel;

26   C.    Determining and awarding to Rocket Fuel the amount of damages sustained by

27   the Company as a result of the violations set forth above from each of the Defendants, jointly

28   and severally, together with interest thereon;

D.     Directing Rocket Fuel to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Rocket Fuel and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the following Corporate Governance Policies:

- a proposal to strengthen the Board's supervision of operations and compliance with applicable state and federal laws and regulations;

- a proposal to develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

- a proposal to strengthen the Company's internal reporting and financial disclosure controls;

- a proposal to strengthen the Company's insider trading controls;

- a provision to permit the shareholders of Rocket Fuel to nominate at least two candidates for election to the Board;

- a proposal to ensure the accuracy of the qualifications of Rocket Fuel's directors, executives and other employees;

- a proposal to strengthen the Company's procedures for the receipt, retention and treatment of complaints received by the Company regarding internal controls; and

- a provision to appropriately test and then strengthen the Company's internal operational control functions.

E.     Awarding to Rocket Fuel restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Individual Defendants;

F.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

31

G.     Granting such other and further equitable relief as the Court deems just and proper.

### **JURY DEMAND**

153.   Plaintiff demands a trial by jury.

Dated: February 4, 2016                                     JOHNSON & WEAVER, LLP
                                                           FRANK J. JOHNSON
                                                           SHAWN E FIELDS


                                                By: _s/Frank J. Johnson_
                                                      FRANK J. JOHNSON

                                                      600 West Broadway, Suite 1540
                                                      San Diego, CA 92101
                                                      Telephone: (619) 230-0063
                                                      Facsimile: (619) 255-1856
                                                      frankj@johnsonandweaver.com
                                                      shawnf@johnsonandweaver.com

                                                      *Attorneys for Plaintiff*

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

DocuSign Envelope ID: 114926A1-693F-4514-9143-6DBC02926941

## **VERIFICATION**

I, William Pack, verify that I have reviewed the foregoing Verified Shareholder Derivative Complaint, and that the allegations as to me are true and correct and that the other allegations upon information and belief are true and correct.

Dated: February 3, 2016                    By: _____
                                                William Pack